No. 25-2039

# In the United States Court of Appeals for the Ninth Circuit

COMMANDER EMILY SHILLING; *et al.*,

*Plaintiffs-Appellees*,

v.

DONALD J. TRUMP, in his official capacity as President of the United States; *et al.*,

*Defendants-Appellants*.

On Appeal from the United States District Court for the Western District of Washington, No. 2:25-cv-00241-BHS, Hon. Benjamin H. Settle

**PLAINTIFFS-APPELLEES' RESPONSE IN OPPOSITION TO DEFENDANTS-APPELLANTS' REQUEST FOR ADMINISTRATIVE STAY**

Matthew P. Gordon
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
(206) 359-8000
MGordon@perkinscoie.com

Omar Gonzalez-Pagan
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
120 Wall Street, 19th Fl.
New York, NY 10005
(212) 809-8585
ogonzalez-pagan@lambdalegal.org

Sasha Buchert
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
815 16th St. NW, Suite 4140
Washington, DC 20006
(202) 804-6245
sbuchert@lambdalegal.org

Kell Olson
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
3849 E Broadway Blvd, #136
Tucson, AZ 85716
(323) 370-6915
kolson@lambdalegal.org

*Additional counsel on signature page.*

*Counsel for Plaintiffs-Appellees*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................... I

INTRODUCTION ........................................................................................................ 2

ARGUMENT ............................................................................................................... 3

    **I.**    An Administrative Stay Would Upend the Status Quo. ............................. 3

    **II.**   Defendants Are Not Harmed by the Status Quo. ........................................ 6

    **III.**  An Administrative Stay Would Cause Irreparable Harm. ......................... 7

    **IV.**  Should the Court Grant an Administrative Stay, the Court Should Order Expedited Briefing on the Motion to Stay Pending Appeal and Instruct Defendants That No Action Negatively Impacting Transgender Servicemembers Be Taken Absent Advance Notice to Plaintiffs and the Court. ....................... 8

CONCLUSION ............................................................................................................ 9

## INTRODUCTION

As the district court cogently explained in its comprehensive memorandum opinion, "[a] preliminary injunction is warranted to preserve the status quo." *Mem. Op.* at 62, *Shilling v. Trump*, No. 2:25-cv-00241 (W.D. Wash. Mar. 27, 2025), ECF No. 104. By contrast, an administrative stay would reverse the status quo, in the process harming Plaintiffs and many other selfless and patriotic servicemembers.

In 2016, then-Secretary of Defense Ashton Carter formally directed that "transgender individuals … be allowed to serve in the military" because "service in the United States military should be open to all who can meet the rigorous standards for military service and readiness." Since that time—**nearly a decade ago**—transgender servicemembers have continuously been serving openly in the military.

Whether they have done so since the Carter Policy or the Austin Policy promulgated in 2021, transgender servicemembers have been serving openly with distinction and honor "for almost four years, and some for much longer than that." *Mem. Op.* at 3. "Throughout [Active-Duty Plaintiffs'] 115 years of collective military service, they have been awarded over 70 medals for their honorable service and distinctive performance—in many instances after coming out as transgender." *Mem. Op.* at 20.

Here, "[t]he last uncontested status preceding this controversy is the Austin Policy, that, for almost four years, … allowed active-duty transgender plaintiffs to

- 2 -

serve openly." *Mem. Op.* at 26. Granting an administrative stay of the preliminary injunction would upend this *status quo ante litem* and would short-circuit the relief sought in this case. As the district court concluded after a hearing and exhaustively evaluating the evidence and sworn testimony proffered by plaintiffs (and the lack thereof by Defendants), "[a]bsent an injunction, all transgender service members are likely to suffer the irreparable harm of losing the military service career they have chosen, while otherwise qualified accession plaintiffs will lose the opportunity to serve." *Mem. Op.* at 65. It would also significantly shift the status quo while the litigation proceeds, contrary to the purpose of an administrative stay.

Accordingly, Plaintiffs respectfully request that the Court deny the request for an administrative stay while it considers Defendants' request for a stay pending appeal.

## ARGUMENT

### I. An Administrative Stay Would Upend the Status Quo.

Defendants' request for an administrative stay should be denied. An administrative stay should not disrupt the status quo. *See Doe #1 v. Trump*, 944 F.3d 1222, 1223 (9th Cir. 2019) ("A temporary stay in this context (sometimes referred to as an administrative stay) is only intended to preserve the status quo until the substantive motion for a stay pending appeal can be considered on the merits, and does not constitute in any way a decision as to the merits of the motion for stay

pending appeal."). When the Ninth Circuit reviews a request for an administrative stay, the "touchstone is the need to preserve the status quo." *Nat'l Urb. League v. Ross*, 977 F.3d 698, 702 (9th Cir. 2020).

Here, "the status quo would be seriously disrupted by an immediate stay of the district court's order." *Nat'l Urb. League*, 977 F.3d at 701. As the district court found, the status quo—"[t]he last uncontested status preceding this controversy"—"is the Austin Policy, that, for almost four years, … allowed active-duty transgender plaintiffs to serve openly." *Mem. Op.* at 26. In other words, the status quo is that transgender servicemembers have been (and are still) getting up each morning, lacing up their boots, and going out to serve our country. And they have been doing so for years, some for nearly a decade.

If an administrative stay were to be granted here, the status quo would be "seriously disrupted" and "upended, rather than preserved." *Nat'l Urb. League*, 977 F.3d at 701, 703. Such an administrative stay would green-light the process of purging thousands of transgender service members from their units and ending their careers. A process that Defendants have indicated would begin today: March 28, 2025. *See* Ex. 1 ("*March 21 Guidance*") to Notice Pursuant to Court's Order, *Shilling v. Trump*, (Mar. 21, 2025) ECF No. 94-01 (directing that involuntary separation processes may be initiated on March 28, 2025); *Mem. Op.* at 19. Rather than preserving the status quo, an administrative stay "would do just the opposite

- 4 -

— it would disrupt the status quo and turn it on its head." *Am. Fed'n of Gov't Emps., AFL-CIO v. United States Off. of Pers. Mgmt.*, No. 25-1677, 2025 WL 835337, at *1 (9th Cir. Mar. 17, 2025).

This is not a circumstance in which a policy has been in effect for an extended period of time. *See*, *e.g.*, *Al Otro Lado v. Wolf*, 945 F.2d 1223, 1224 (9th Cir. 2019) (administratively staying an enjoined regulation that had been in effect for five months). The Military Ban at issue here was announced issued mere days after the new administration came in. *See* Ex. 1 (Exec. Order 14183) to Decl. of Matthew Gordon at 1, *Shilling v. Trump*, ECF No. 31-01; *Mem. Op.*, at 1. It was then hurried through the Department of Defense which issued formal guidance on February 26, 2025. *See* Ex. 7 ("February 26 Guidance") to Notice Pursuant to Court's Order, *Shilling v. Trump*, ECF No. 58-07. Despite being created in a "rushed and haphazard" manner that significantly departs from the usual development of military policy, the Military Ban has still not gone into effect. Suppl. Decl. of Alex Wagner at ¶¶ 25-26, *Shilling v. Trump*, ECF No. 84. Nonetheless, Defendants have made it clear that, absent an injunction, starting ***today***, they intend to initiate the involuntary separation processes, which immediately deems service members non-deployable. *See March 21 Guidance*.

## II. Defendants Are Not Harmed by the Status Quo.

While the only relevant question in determining whether an administrative stay is appropriate is whether it preserves the status quo, it is worth noting that Defendants have failed to demonstrate they would be harmed by maintaining the status quo.

Defendants have at their fingertips nearly ten years of data to draw from to support their claims that transgender people are unfit to serve and to prove that transgender people are "inconsistent" with the military values of "honesty" "humility" and "integrity." Indeed, as the district court observed, "[a]ny evidence that [military] service [by transgender people] over the past four years harmed any of the military's inarguably critical aims would be front and center. But there is none." *Mem. Op.* at 5. Here, the record is clear:

> Plaintiffs submit evidence that their service and that of other transgender service members has not had the damaging effects that purportedly support the Military Ban. The government has in turn provided no evidence supporting the conclusion that military readiness, unit cohesion, lethality, or any of the other touchstone phrases long used to exclude various groups from service have in fact been adversely impacted by open transgender service under the Austin Policy. The Court can only find that there is none.

*Mem. Op.* at 2.

Defendants will not be harmed by preserving the status quo and allowing transgender servicemembers to continue serving our country while this Court decides whether to stay the preliminary injunction on appeal.

- 6 -

Furthermore, as noted below, transgender servicemembers are already "held to the same standards and procedures, thus guaranteeing readiness and deployability, all the while preserving retention." Mot. for Prelim. Inj. at 14, *Shilling v. Trump*, ECF No. 23. There already are generally applicable regulations in place that would apply if *any* service member—whether they are transgender or not—that ensure military readiness. *See*, *e.g.*, Ex. 35 ("Soper Decl.") to Suppl. Decl. of Matthew Gordon, *Shilling v. Trump*, ECF No. 83-09 (noting the military already has generally applicable criteria to determine whether a medical condition affects the ability to serve and deployability).

### III. An Administrative Stay Would Cause Irreparable Harm.

Not only would allowing the Military Ban to go into effect upend and reverse the *status quo ante litem*, but it would also result in concrete and devastating harms to transgender servicemembers. As the district court held, "[a]bsent an injunction, all transgender service members are likely to suffer the irreparable harm of losing the military service career they have chosen, while otherwise qualified accession plaintiffs will lose the opportunity to serve." Mem. Op. at 65. "Because the military has operated smoothly for four years under the Austin Policy, any claimed hardship it may face in the meantime pales in comparison to the hardships imposed on transgender service members and otherwise qualified transgender accession candidates, tipping the balance of hardships sharply toward plaintiffs." *Id.*

Granting an administrative stay would allow Defendants to immediately begin pulling transgender troops from deployment, combat operations, highly specialized military occupational specialties, and countless other contexts. Defendants would do so simply because these servicemembers are transgender. Allowing such involuntary separation processes to occur would cause immediate and irreparable harm, not only to these servicemembers but to our Country. These involuntary separations would immediately and irreparably harm our military readiness by depriving units of experienced servicemembers who the military has spent considerable resources to train and whom their units have come to trust and to rely upon.

**IV. Should the Court Grant an Administrative Stay, the Court Should Order Expedited Briefing on the Motion to Stay Pending Appeal and Instruct Defendants That No Action Negatively Impacting Transgender Servicemembers Be Taken Absent Advance Notice to Plaintiffs and the Court.**

As noted herein, an administrative stay is improper in this case as it would disrupt the status quo and result in the very harms the preliminary injunction is intended to prevent. However, should the Court be inclined to enter an administrative stay, briefing relating to and consideration of the motion to stay the preliminary injunction pending appeal should be expedited. In such circumstances, Plaintiffs request that their response to Defendants' motion requesting a stay pending appeal be due by Monday, March 31, 2025, and any reply be due no later than Tuesday, April 1, 2025.

In addition, because aside from preserving the status quo, an administrative stay is only intended to give the Court sufficient time to consider an emergency motion for a stay pending appeal, the Court should instruct Defendants that no action negatively affecting transgender servicemembers be taken during the pendency of the administrative stay without providing sufficient notice (at least 48 hours) to Plaintiffs and the Court. *Cf.* Order, *Talbott v. United States*, No. 25-5087 (D.C. Cir. Mar. 27, 2025) ("If any action occurs that negatively impacts service members under the Hegseth Policy and MDI Guidance before the court lifts the administrative stay, the plaintiffs may file a motion to lift the administrative stay, and the court will consider it expeditiously.").

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' request for an administrative stay while the Court considers Defendants' request for a stay pending appeal. Plaintiffs intend to file their opposition to Defendants' request for a stay pending appeal in accordance with whatever briefing schedule is set by the Court.

Should the Court be inclined to issue an administrative stay, the Court should set expedited briefing on Defendants' emergency motion for a stay pending appeal such that Plaintiffs' opposition is due by Monday, March 31, 2025, and any reply is due no later than Tuesday, April 1, 2025.

- 9 -

Dated this 28th day of March 2025.

Respectfully submitted,

/s/ Omar Gonzalez-Pagan

| | |
|---|---|
| Matthew P. Gordon<br>PERKINS COIE LLP<br>1201 Third Avenue, Suite 4900<br>Seattle, WA 98101<br>(206) 359-8000<br>MGordon@perkinscoie.com<br><br>Danielle Sivalingam (Serbin)<br>PERKINS COIE LLP<br>505 Howard Street, Suite 1000<br>San Francisco, CA 94105<br>(415) 344-7000<br>DSivalingam@perkinscoie.com<br><br>Sarah Warbelow*<br>Cynthia Cheng-Wun Weaver*<br>Ami Rakesh Patel*<br>HUMAN RIGHTS CAMPAIGN FOUNDATION<br>1640 Rhode Island Ave. N.W.<br>Washington, DC 20036<br>(202) 527-3669<br>Sarah.Warbelow@hrc.org<br>Cynthia.Weaver@hrc.org<br>Ami.Patel@hrc.org<br><br>*Application for admission forthcoming.* | Omar Gonzalez-Pagan<br>LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.<br>120 Wall Street, 19th Fl.<br>New York, NY 10005<br>(212) 809-8585<br>ogonzalez-pagan@lambdalegal.org<br><br>Sasha Buchert<br>LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.<br>815 16th St. NW, Suite 4140<br>Washington, DC 20006<br>(202) 804-6245<br>sbuchert@lambdalegal.org<br><br>Kell Olson<br>LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.<br>3849 E Broadway Blvd, #136<br>Tucson, AZ 85716<br>(323) 370-6915<br>kolson@lambdalegal.org<br><br>Jennifer C. Pizer<br>LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.<br>800 S. Figueroa Street, Suite 1260<br>Los Angeles, CA 90017<br>(213) 382-7600<br>jpizer@lambdalegal.org<br><br>Camilla B. Taylor<br>Kenneth Dale Upton, Jr.<br>LAMBDA LEGAL DEFENSE AND |

                                                    EDUCATION FUND, INC.
                                                    3656 N Halsted St.
                                                    Chicago, IL 60613
                                                    (312) 663-4413
                                                    CTaylor@lambdalegal.org
                                                    KUpton@lambdalegal.org

*Counsel for Plaintiffs-Appellees*